UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:13-CV-887-TBR

NORTHERN ELECTRIC, INC.                                      PLAINTIFF

v.

MICHELIN NORTH AMERICA, INC., *et al.*                      DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

In exchange for over $2.5 million, Northern Electric, Inc. ("NEI") contracted to perform electrical work in a chemical plant for Michelin North America, Inc. ("Michelin").  NEI completed the work in a timely and satisfactory manner, but in the process two of its employees allegedly caused a temporary power outage in the plant's manufacturing system, costing Michelin over $3 million.  At issue here is whether Michelin has a contractual right to withhold three monthly payments to NEI until it has been compensated for the damage allegedly caused by NEI's employees.  NEI claims that Michelin's withholding is a breach of contract and has moved for summary judgment to collect these payments.  For the reasons that follow, the Court will deny the motion.

I.

NEI agreed to demolish old and install new electrical work in a chemical plant for Michelin.  In exchange, Michelin agreed to pay NEI $2,640,000 in monthly progress payments. NEI eventually completed the project, and Michelin was satisfied with NEI's final product. Nonetheless, Michelin refused to pay NEI's invoices for February, March, and April—which totaled $590,071.57—so NEI sued for breach of contract.

Michelin refuses to pay these invoices because of an incident that occurred at the plant on January 21, 2013. According to Michelin, two NEI employees entered an area of the plant known as the "Old Glass House" without the requisite work permit to perform some electrical work. They removed a panel cover and inadvertently caused fifteen circuit breakers to shut off. This cut off some lights and, more importantly, shut down several system monitoring and flow devices in Michelin's manufacturing processes for 35 minutes.

That turned out to be an expensive 35 minutes. This plant manufactures rubber for Michelin tires. Several stages of pre-heaters keep the rubber hot and in a viscous state, capable of flowing from one section to another. When the power was shut off, the rubber stopped flowing, but the pre-heaters kept heating. Some of the stagnant rubber basically cooked in three of the pre-heaters, causing significant damage not only to the ruined rubber but also to the pre-heaters. It took Michelin two weeks to manually repair the damage. Because of property damage, product losses, repair costs, and lost use, Michelin claims the power outage cost it approximately $3,300,000.

Shortly after the January 21 power outage, Michelin contacted NEI for information and statements from key personnel. In a report dated February 20, Michelin concluded that two NEI employees were responsible for switching off the circuit breakers and causing the power outage.

Meanwhile, NEI kept working and Michelin did not signal that it was withholding payment or abandoning the contract. In fact, on February 12, despite the ongoing investigation, Michelin authorized a reduction in retainage from 10% to 5% (in response to NEI's request), which was billed to Michelin and paid on March 20. Yet the unpaid monthly invoices piled up. On May 9, with three invoices outstanding, Michelin finally demanded indemnity from NEI and announced that it was withholding payment on all three statements.

Michelin's position is that the contract entitles it to withhold the $590,071.57 until NEI pays for the damage it caused.  For its part, NEI says that the contract does not allow Michelin to withhold funds under these circumstances.  And even if it did, NEI says, Michelin should still pay immediately because the grounds for withholding payment have been removed.  This alternative theory is based on insurance; NEI claims that its commercial general liability policy (issued by a company called "CNA") will cover any damages resulting from the January 21 incident.  To date, CNA has not issued a reservation of rights letter and has signaled that it does not intend to do so under the current circumstances.

## II.

The contract specifically defines when Michelin may withhold payment.  Section 3.7 provides that Michelin "may withhold . . . the whole or a part of any progress or final payment to such extent as may be necessary to protect [Michelin] from loss on account of" a list of grounds, including two that are relevant here:

> a.  Defective or damaged work not remedied; [and]
>
>     . . . .
>
> g.  Failure of [NEI] to perform properly and completely any one or more of its material obligations under this Contract.

DN 84-1, at PageID # 897.  Section 3.7 does not allow Michelin to withhold payment indefinitely.  It concludes: "When the grounds for withholding or nullifying a payment under this Section have been removed, such payment shall be made."  *Id.* at PageID # 898.  Combined, these three provisions within Section 3.7 form the basis for this dispute.

Other provisions help explain Section 3.7.  Critical to Section 3.7(a), the contract defines "Work" as "everything expressly and implicitly required to be done, completed, performed or

furnished by [NEI] under the Contract including, but not limited to, labor, materials, products, services and equipment."  *Id.* at PageID # 888.

In defining NEI's "material obligations" under Section 3.7(g), the Court looks to various parts of Section 2 ("[NEI]'s Work and Obligations").  Section 2.2 states that:

> [NEI] is aware that [Michelin] requires precision and high quality in the Work in order to assure maintenance of [Michelin]'s strict standards of business operation.

*Id.* at PageID # 891.  Similarly, Section 2.3 provides:

> [NEI] shall perform in strict accordance with the Contract and [Michelin]'s instructions, realizing that strict compliance is required in light of [Michelin]'s technical needs and in view of the time, care and effort [Michelin] has expended. The Work must be carried out with continuous regard for structural soundness, length of useful life, durability and finish.  The Work shall be performed in accordance with high standards of the trade; materials and equipment of fine quality shall be used except as otherwise expressly stipulated . . . .

*Id.*  Section 2.4 defines a more specific obligation:

> [NEI] shall directly supervise and direct the Work, its employees and any Subcontractor using its best skill and attention; be solely responsible for all construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract; and be responsible to [Michelin] and to third parties . . . .

*Id.*  Likewise, Section 2.8 states:

> [NEI] shall employ on the Project only fit, competent, skilled and qualified workmen.

*Id.* at PageID # 892.

Lastly, NEI has raised one additional provision concerning notice.  Section 3.4 provides that if Michelin "does not agree with the request for payment submitted by [NEI], [it] shall":

> a.  Advise [NEI] within ten (10) days of the grounds for disagreement, and
>
> b.  Either notify [NEI] of corrections which [Michelin] proposes to make or ask [NEI] to make a new Application for Payment . . . in order to allow [Michelin] to make the corresponding payment before the end of the month following that in which the Work was completed by [NEI].

*Id.* at PageID # 896.

III.

NEI moved for summary judgment on its breach of contract claim to require Michelin to pay the withheld funds immediately. Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if the submitted evidence shows that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court views the facts in the light most favorable to Michelin, the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). For the reasons that follow, the Court finds summary judgment inappropriate at this time.

IV.

NEI claims three independent paths to summary judgment. First, NEI argues that Michelin has no grounds to withhold payment under Section 3.7. Second, even if it did, NEI says that any grounds for withholding funds have been removed. Last, NEI claims that Michelin's failure to give notice under Section 3.4 bars Michelin from withholding funds. The Court considers—and rejects—each argument in turn.

A.

The first issue is whether Michelin may withhold payment under Section 3.7. Section 3.7(a) allows Michelin to withhold payment to protect itself from loss on account of "[d]efective or damaged work not remedied." NEI would have the Court read "work" to mean "work product"; because the electrical demolition and installation was timely completed and the project passed several performance tests, NEI says, the "work" could not have been defective.

The problem with this argument is that "work" is a defined term that includes much more than tangible work product. It also includes "everything expressly and implicitly required to be

5

done . . . by [NEI] under the Contract including, but not limited to, labor . . . [and] services."  DN 84-1, at PageID # 888.  Considering the facts in the light most favorable to Michelin, a reasonable jury could find that NEI's "labor" and "services" were "defective."  In short, two of its employees entered an area—the Old Glass House—where they had no right to be, removed a panel cover that should not have been removed, and cut off the power to critical parts of Michelin's manufacturing process.  On this basis alone, NEI's argument that Michelin cannot withhold payment under Section 3.7(a) falls short.

A second provision bolsters this conclusion.  Section 3.7(g) allows Michelin to withhold payment based on the "[f]ailure of [NEI] to perform properly and completely any one or more of its material obligations under this Contract."  *Id.* at PageID # 888.  At least two material obligations preclude summary judgment.  First, Section 2.4 requires NEI to "directly supervise and direct the Work [and] its employees using its best skill and attention" and to "be solely responsible for all construction . . . means . . . and procedure" and to "be responsible to Michelin."  *Id.* at PageID # 891.  Given the importance of precision and care required to demolish and install electrical work in a chemical plant, a reasonable jury could find that Michelin both failed to directly supervise the work of its employees and that its obligation to directly supervise its employees was material.  Second, Section 2.8 requires NEI to "employ on the Project only fit, competent, skilled and qualified workmen."  *Id.* at PageID # 892.  Given the egregious alleged failures by two of NEI's employees (and again, the explicit importance of precision in the project), a reasonable jury could find that NEI breached this material obligation.

B.

The second issue is whether Michelin's "grounds for withholding . . . payment . . . have been removed" because of NEI's insurance.  Based on three communications with its insurer

(CNA), NEI argues that "any ground for withholding payment has clearly and unequivocally been removed . . . ." DN 77-1, at PageID # 769. First, in July 2014, CNA represented that it saw no reason to issue a reservation of rights with respect to any damages NEI would be responsible for because of the power outage. DN 77-5, at PageID # 809. Second, CNA apparently "reaffirmed this position to Michelin in the mediation that occurred on October 13, 2014." *Id.* at PageID # 810. And third, CNA sent a letter to NEI in November 2014 that stated, in part: "Based on the allegations made in the litigation and the information that has been provided and developed to date, there is no basis for a reservation of rights related to the coverage provided to Northern Electric Inc. under the policies issued to them." *Id.* at PageID # 813-14.

Even assuming that these three statements are admissible, they do not go as far as NEI would like. First, the existence of insurance that would pay for damages at some point in the future does not remove any "grounds for withholding payment"—it does not fix any defective work and it does not require NEI to perform any "material obligations" that it previously failed to perform. Second, withholding of payment is still "necessary to protect [Michelin] from loss." Throughout the litigation, CNA has stated that it sees no reason to deny coverage *at this time*. But circumstances could change. In its November 6 letter, for example, CNA wrote: "Please keep in mind that the position provided is based upon the allegations made by . . . Michelin to date. Should there be a change in those allegations, we would have to re-visit our analysis." DN 77-5, at PageID #814. And CNA's position is explicitly "[b]ased on the . . . information that has been provided and developed to date." *Id.* at PageID # 815. Should new information or allegations arise, CNA's position could change. NEI's claim that these communications "clearly and unequivocally" remove Michelin's grounds for withholding payment is simply not supported by the record.

C.

The last issues are whether Michelin violated Section 3.4's notification requirement, and if so, whether that violation precludes Michelin from withholding funds under Section 3.7. Section 3.4 states that if Michelin "does not agree with the request for payment submitted by [NEI], [it] shall . . . [a]dvise [NEI] within ten (10) days of the grounds for the disagreement." *Id.* at PageID # 896. After advising NEI of the disagreement, Michelin had to "[e]ither notify [NEI] of corrections [Michelin] proposes to make or ask [NEI] to make a new Application for Payment that would be acceptable to [Michelin]." *Id.* Michelin does not dispute that, despite receiving NEI's invoices for February, March, and April 2013, it did not notify NEI of its grounds for withholding payment until May 9.

Still, Section 3.4 does not bar Michelin from withholding funds under Section 3.7 for two reasons. First, Michelin did not violate that provision. No evidence suggests that Michelin "does not agree with" any "request for payment submitted by [NEI]." Michelin does not dispute any of the three invoices. It does not cite error or omission and it does not claim that the invoices could have been corrected. Rather, Michelin seems to acknowledge (for now) that it owes NEI $590,071.57—as soon as NEI pays for the damage it caused. The second reason Section 3.4 does not preclude Michelin from withholding funds is that Section 3.4 is independent of Section 3.7. Neither section references the other. And nothing in the contract suggests that a failure of notice under Section 3.4 waives the right to withhold payment under Section 3.7. The provisions create separate rights and obligations. So even if Michelin did violate Section 3.4 with its May 9 letter, its right to temporarily withhold payment was unaffected.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that NEI's Motion for Summary Judgment is DENIED.

A telephonic scheduling/status conference is set June 12, 2015 at 10:00 a.m. Eastern Time.   Counsel must call 1-877-848-7030 then give the Access Code 2523122 and #, then when prompted press # again to join the call.

**Thomas B. Russell, Senior Judge**
**United States District Court**

May 7, 2015

cc:      Counsel of Record